**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| FLORIDA HANDLING SYSTEMS, INC., ) | Case No. |
| MAZZELLA LIFTING TECHNOLOGIES, INC., ) | |
| and ) | Judge |
| MAZZELLA HOLDING COMPANY, INC. ) | |
| 21000 Aerospace Parkway ) | |
| Cleveland, Ohio 44142 ) | |
| ) | **VERIFIED COMPLAINT** |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHN SINAGOGA ) | |
| 1266 Parliament Avenue ) | |
| Madison Heights, Michigan 48071 ) | |
| ) | |
| Defendant. ) | |

NOW COMES Plaintiffs, Florida Handling Systems, Inc. ("FHS"), Mazzella Lifting Technologies, Inc. ("MLT"), and Mazzella Holding Company, Inc. ("MHC") (collectively, "Plaintiff" or "Mazzella Companies") by and through counsel, and for its Verified Complaint against Defendant, John Sinagoga ("Sinagoga" or "Defendant"), hereby states as follows:

**THE PARTIES**

1. FHS, a Florida corporation, and its sister company, Mazzella Lifting Technologies, Inc., an Ohio corporation ("MLT"), are both wholly-owned subsidiaries of Mazzella Holding Company, Inc. ("MHC"), an Ohio corporation. Collectively these three entities all operate under the trade name Mazzella Companies.

2. At all times pertinent hereto, MHC, MLT and FHS have their principal offices located at 21000 Aerospace Parkway, Cleveland, Cuyahoga County, Ohio 44142, but conduct

1

business throughout the United States of America, including at offices in states outside of Ohio, such as Michigan.

3. Defendant John Sinagoga ("Sinagoga") is an individual residing in the State of Michigan who, upon information and belief, resides at 1266 Parliament Ave, Madison Heights, MI 48071. Defendant Sinagoga currently provides services as a Regional Sales Manager for the Great Lakes Region for one of Plaintiff's competitors, DeShazo Crane Company, LLC ("DeShazo").  (**Exhibit 1** – Sinagoga/DeShazo Business Card).

## JURISDICTION AND VENUE

4. Mazzella Companies brings this action pursuant to the Defend Trade Secrets Act ("DTSA") at 18 U.S.C. § 1836 *et seq*. This Court possesses subject matter jurisdiction over Mazzella Companies' trade secrets claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

5. This Court possesses supplemental jurisdiction over Mazzella Companies' remaining claims pursuant to 28 U.S.C. § 1367.

6. The claims for damages against the Defendants exceed $75,000.

7. This Court possesses personal jurisdiction over Defendant Sinagoga as he performed services for Mazzella Companies in this District and Division, and the conduct, information, and harm at issue in this matter occurred in this District and Division.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) (c) and (d) as Defendant Sinagoga performed services for Mazzella and continues to provide competitive services for Defendant DeShazo in this District and Division. Further, Defendant Sinagoga consented to venue in this District and Division in the Non-Disclosure, Non-

Competition, and Non-Solicitation Agreement (**Exhibit 2** – John Sinagoga Signed Non-Disclosure, Non-Competition, and Non-Solicitation Agreement).

9. Venue is further proper pursuant to 28 U.S.C. § 1391(b) as Defendant DeShazo and Defendant Sinagoga have continuous and systematic contacts with this District and Division and a substantial part of the events or omissions giving rise to the claims occurred in, and a substantial part of the property that is the subject of the action is located within this District and Division.

## FACTUAL ALLEGATIONS

10. Mazzella Companies is one of the largest independently-owned companies in the overhead lifting and rigging industries and is a manufacturer and distributor of a wide range of lifting products for industrial, commercial and specialty applications. In addition, Mazzella Companies is a leader in providing overhead cranes, hoisting equipment, services (including installation, inspection, repair and rebuilding of cranes and related equipment), material handling, specialty machinery, and warehousing solutions at more than thirty (30) locations in North America.

11. Defendant Sinagoga now works for DeShazo in the same region where he worked for Mazzella Companies. DeShazo is a direct competitor of Mazzella Companies in the business of custom-built cranes, robotic automation systems, and services including inspections, repairs, and rebuilds on overhead crane or hoisting equipment throughout North America.

## Defendant John Sinagoga

12. FHS employed Defendant John Sinagoga from April 17, 2023 until September 20, 2023 when he unexpectedly resigned.

13. On or around April 1, 2017, Mazzella Holding Company, Inc. acquired Florida Handling Systems, Inc. ("FHS"), including all of FHS's stock ownership. Through this acquisition, FHS became a wholly-owned subsidiary of Mazzella Holding Company, Inc. ("MHC"), a sister company of Mazzella Lifting Technologies ("MLT") and joined Mazzella Companies.

14. As a Business Development Specialist, Sinagoga's responsibilities involved the Toledo, Cleveland and Michigan area and included assisting account managers, providing customer support, facilitating quotes for account managers, researching additional growth opportunities in the region. To perform his job, Sinagoga had access to information belonging to and performed services for all Mazzella Companies primarily from an office location in Michigan.

15. As a condition of his employment, Sinagoga executed a Non-Disclosure, Non-Competition, and Non-Solicitation Agreement ("Sinagoga NDNCNS Agreement") in which Sinagoga agreed to specific restrictive covenants governing his employment and post-employment obligations to Sinagoga including, but not limited to, non-solicitation, non-disclosure, non-servicing, and confidentiality. A true and accurate copy of the Sinagoga NDNCNS Agreement is attached as **Exhibit 2**.

16. During his employment, Sinagoga had extensive access to Mazzella Companies' highly valuable, confidential and proprietary information. That information pertained to, among other information, client contact information, quotes, customer equipment and service needs, inventory, Mazzella Companies' customer and master contracts and subcontracts, and pricing models inside and outside of Ohio.

4

17. In his role as a Business Development Specialist, Sinagoga had access to and utilized Mazella Companies' company-wide customer, market, financial, legal, and strategic information pertaining to all of Mazzella Companies' markets inside and outside of Ohio, including but not limited to, knowledge of sales team, experience, qualifications, and productivity, strategy marketing and business development materials such as overall sales volume by market and business unit, profit and loss information, vendor lists and strategies, legal analysis and other business strategies and models . All of this information is confidential and proprietary, is not publicly known, has been generated and cultivated over many years, and gives Mazzella Companies' a substantial competitive advantage over its competitors.

18. Mazzella Companies has engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information, including, among other actions, requiring passwords to access computer systems and databases, restricting access to secured shared files, having sales and other personnel enter into confidentiality, non-disclosure, non-solicitation and non-servicing agreements, preventing public access to non-public areas of Mazzella Companies' offices, and monitoring employee telephone and computer usage. That information included information inside and outside of Ohio.

19. These efforts also included, among other things, requiring employees, such as Sinagoga, who Mazzella Companies provided access to confidential and proprietary information and trade secrets to perform essential job functions, to sign written agreements that restrict their ability to use or disclose that information.

20. In the days prior to his September 20, 2023 notice of resignation (specifically on Sunday, September 17, 2023), Sinagoga sent numerous emails from his company email

account to a personal email account. Those emails included, but were not limited to the following types of highly confidential and proprietary information belonging to Mazzella Companies:

- A number of customer quotes which included key customer contact information, customer needs, and pricing information;

- Customer purchase orders

- Customer purchase history and invoice summaries;

- Profit and Loss Statements;

- Vendor lists with key contact information;

- Identification and locations of Mazzella Companies' key sale people and their territories;

- Mazzella Companies' templates for commercial contracts, business review, inspection,  maintenance and other operations; and

- Legal advice and analysis pertaining to a key business contract.

21. After notifying Mazzella Companies of his resignation on September 20, 2023, Sinagoga's last day of work at Mazzella Companies was September 21, 2023.

22. Defendant Sinagoga provides services for DeShazo as a Regional Sales Manager for the Great Lakes and has performed such services in Michigan and Ohio.

### Non-Disclosure, Non-Competition, and Non-Solicitation Agreement with Defendant Sinagoga

23. The Sinagoga NDNCNS Agreement contains the following provision:

**Confidential Information**.  For purposes of this agreement, "*Confidential Information*" means all non-public information of Company about any of the following subjects:

(a). Actual Customers and Potential Customers (including the names and direct contact information of decision-makers, customer agreements, customer preferences and requirements, and purchase histories and requests);

(b). all products being designed, developed, manufactured, sold, serviced or supported by Company (including information about Company's capabilities for sourcing and distribution of those products);

(c). all services offered by Company or that Company is considering offering (including information about Company's capabilities for offering these services);

(d). Company's confidential contractual arrangements with third parties (including customers and vendors);

(e). strategic analysis and assessments of Company, its competitors, and the industry in which Company provides products and services;

(f). business and marketing plans, strategic plans, and other similar materials pertaining to any aspect of Company or its operations;

(g). Company's financial information (including information about historical, actual, and projected revenues, expenses, profit margins, budgets, and forecasts);

(h). Company's computer systems and networks (including information about its system and network architecture and topology, means of network access, network monitoring and detection practices and capabilities, incident response procedures, and other information security measures);

(i). login credentials, tokens, keys, or other means of accessing any Company network resource or online service (including services hosted elsewhere);

(j). trade secrets relating to products and services being researched, designed, developed, manufactured, sold, offered, or considered for offering by Company and that are used in, or intended for use in, interstate or foreign commerce; and

(k). anything else that under the law constitutes a trade secret of Company.

"*Confidential Information*" also includes any lists, summaries, compilations, or extracts of any of the above items, including but not limited to customer lists, inspection lists, and service lists.

*See* Exhibit 2 at Paragraph 2.

24. The Sinagoga NDNCNS Agreement contains the following provision:

**Ownership of Confidential Information**.  Company's Confidential Information is Company's exclusive property.  Employee does not have any ownership interest or usage rights concerning any of Company's Confidential Information, nor will Employee acquire any ownership interest or usage rights in Company's Confidential Information (even if Employee participates in its creation).

*See* Exhibit 2 at Paragraph 3.

25. The Sinagoga NDNCNS Agreement further contains the following provision:

**Return of Confidential Information**.  When Employee's employment with Company ends, Employee shall—without waiting for a request by Company—immediately return to Company all papers, data, devices, and other items that are, or that contain, Company's Confidential Information.  Employee shall not make or keep any copies, notes, summaries or extracts of anything that is or must be returned pursuant to this section.

*See* Exhibit 2 at Paragraph 6.

26. The Sinagoga NDNCNS Agreement additionally contains the following provision detailing the imposition of a duty of loyalty owed to Mazzella Companies during employment:

**Duty of Loyalty During Employment**.  While employed by Company, Employee shall not either (a) become employed by, own an interest in, or provide any services or assistance to any Competing Business (except that Employee may own less than 1% of the issued and outstanding securities of any publicly-traded corporation); or (b) solicit, advise or assist any Actual Customer or Potential Customer of Company to engage in any business transaction with a Competing Business that involves Competitive Services.

*See* Exhibit 2 at Paragraph 9.

27. The Sinagoga NDNCNS Agreement defines the following terms:

"*Actual Customer*" as "anyone who has purchased Competitive Services from Company during the immediately-preceding 24-month period.

"*Competing Business*" as "anyone, other than Company, who offers Competitive Services or that is planning to offer Competitive Services.

8

"*Potential Customer*" as "anyone who, at any point during the immediately-preceding 24-month period, communicated with Company about a possible business transaction involving Competitive Services.

*See* Exhibit 2 at Paragraph 13.

28. The Sinagoga NDNCNS Agreement contains the following provision detailing Sinagoga's consent to governing law and venue:

**Governing Law and Venue**.  This agreement is being made pursuant to the Defend Trade Secrets Act of 2016, which governs this agreement as well as all adversarial proceedings arising out of this agreement. As to all subject matters where the Defend Trade Secrets Act of 2016 is inapplicable, the laws of the state of Ohio, without giving effect to its principles of conflicts of law, otherwise govern this agreement.  Venue of any action, proceeding, claim or other litigation relating to or resulting from the enforcement of this agreement shall be in Cuyahoga County, Ohio.

*See* Exhibit 2 at Paragraph 14.

29. The Sinagoga NDNCNS Agreement contains the following provision detailing Sinagoga's consent to enforcement of the Sinagoga NDNS Agreement:

**Successors to Company**.  Without advance notice to Employee and without any further consent of Employee being necessary, Company may permit any successor (whether direct or indirect or by purchase, merger, consolidation, or otherwise) to Company or to all or substantially all of its assets to assume its rights and obligations under this agreement, and to exercise and perform such rights and obligations in the same manner and to the same extent as if the succession had not taken place.

*See* Exhibit 2 at Paragraph 16.

### Defendant DeShazo's Continued Employment of Defendant Sinagoga in violation of the Sinagoga NDNS Agreement

30. On November 8, 2023, Mazzella Companies' counsel sent Defendant Sinagoga, a cease and desist letter (**Exhibit 3** –Cease and Desist Letter) detailing Sinagoga's post-employment obligations with a copy of the Sinagoga NDNCNS Agreement attached.

31. DeShazo, not Sinagoga, responded on November 9, 2023 confirming receipt of the Cease and Desist Letter, acknowledging the post-employment obligations imposed on Sinagoga and suggesting that Sinagoga has returned all confidential information and related documentation to Mazzella Companies (**Exhibit 4** – DeShazo Response Letter).

32. To date, Sinagoga has not returned any  information belonging to Mazzella Companies and DeShazo continues to employ Sinagoga while he possesses Mazzella Companies' highly sensitive confidential, proprietary and company-wide trade secret information.

## COUNT ONE: MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT

33. Mazzella Companies incorporates herein by reference all allegations set forth in Paragraphs 1 through 32 as if fully rewritten herein.

34. The confidential and proprietary information to which Sinagoga has access and which Sinagoga had access to while employed at Mazzella Companies, as described in this Complaint, was not publicly known, has been generated and cultivated by Mazzella Companies over many years, gives Mazzella Companies a substantial competitive advantage over its competitors nationwide and constitutes trade secrets within the meaning of 18 U.S.C. §1839(3).

35. This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

36. Mazzella Companies took reasonable steps to protect its confidential, proprietary and trade secret information, as described in this Complaint.

37. Since having left Mazzella Companies and continuing to the present, Sinagoga, without justification or privilege to do so, has misappropriated and continues to possess

Mazzella Companies' trade secrets such as the information described in Paragraph 20 above which is used in, or intended for use in, interstate or foreign commerce in the industry in which Mazzella Companies and Defendant Sinagoga's new employer, DeShazo, operate, by taking, retaining, disclosing, and using Mazzella Companies' confidential, proprietary, and trade secret information to further his own business interests and the interests of his new employer, DeShazo, to directly compete with Mazzella Companies and to the detriment of Mazzella Companies.

38. Defendant Sinagoga has failed to return Mazzella Companies' confidential, proprietary, and trade secret information in his possession.

39. Mazzella Companies has no adequate remedy at law to redress these misappropriations of its trade secrets and faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

40.  As a direct and proximate result of Defendants' actions, Mazzella Companies faces the immediate and irreparable loss of its confidential, proprietary or trade secret information, the loss of its competitive position, the loss of business and employee goodwill, the loss of experienced workforce, loss of sales, and the loss of its investment in time and energy in generating its confidential information. Mazzella Companies has no adequate remedy at law for these losses and no amount of money could compensate Mazzella Companies for these losses.

41. Mazzella Companies is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Defendant Sinagoga and any other person or entity acting in aid or concert, or in participation with him as follows: (a) prohibiting Sinagoga from any further use of Mazzella Companies' information (b)

prohibiting Sinagoga and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Mazzella Companies' trade secret or confidential information; (c) prohibiting Sinagoga from engaging in any other conduct that would otherwise violate the Sinagoga NDNCNS Agreement; and (d) requiring Sinagoga to immediately return all of Mazzella Companies' property and information.

42. As a direct and proximate result of Defendant's actions, Mazzella Companies has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including attorney fees and costs associated with this action.

## COUNT TWO: MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER OHIO LAW

43. Mazzella Companies incorporates herein by reference all allegations set forth in Paragraphs 1 through 42 as if fully rewritten herein.

44. The confidential and proprietary information to which Sinagoga has access and had access while Sinagoga was employed at Mazzella Companies, as described in this Complaint, was not publicly known, has been generated and cultivated by Mazzella Companies over many years, gives Mazzella Companies a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

45. This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

12

46. Mazzella Companies took reasonable steps to protect its confidential, proprietary and trade secret information, as described in this Complaint.

47. Since having left Mazzella Companies and continuing to the present, Sinagoga, without justification or privilege to do so, has misappropriated and continues to possess Mazzella Companies' confidential, proprietary, and trade secret information, such as the information described in Paragraph 20 above to further his own business interests and the interests of his new employer, DeShazo, to directly compete with Mazzella Companies and to the detriment of Mazzella Companies.

48. Mazzella Companies has no adequate remedy at law to redress these misappropriations of its trade secrets and faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

49. As a direct and proximate result of Defendants' actions, Mazzella Companies faces the immediate and irreparable loss of its confidential, proprietary or trade secret information, the loss of its competitive position, the loss of business and employee goodwill, the loss of experienced workforce, loss of sales, and the loss of its investment in time and energy in generating its confidential information. Mazzella Companies has no adequate remedy at law for these losses and no amount of money could compensate Mazzella Companies for these losses.

50. Mazzella Companies is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining and restraining Sinagoga and any other person or entity acting in aid or concert, or in participation with him as follows: (a) prohibiting Sinagoga from any further use of Mazzella Companies' information (b) prohibiting Sinagoga and any other person or entity acting in aid or concert, or in participation with

him from otherwise using or disclosing any of Mazzella Companies' trade secret or confidential information; (c) prohibiting Sinagoga from engaging in any other conduct that would otherwise violate the Sinagoga NDNCNS Agreement; and (d) requiring Sinagoga to immediately return all of Mazzella Companies' property and information..

51. As a direct and proximate result of Defendant's actions, Mazzella Companies has also been damaged in a monetary amount to be proven at trial, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including attorney fees and costs associated with this action.

## COUNT THREE: BREACH OF CONTRACT

52. Mazzella Companies incorporates herein by reference all allegations set forth in Paragraphs 1 through 51 as if fully rewritten herein.

53. On April 17, 2023, Sinagoga executed the Sinagoga NDNCNS Agreement. As consideration for the Sinagoga NDNCNS Agreement, Mazzella Companies provided Sinagoga continued employment and access to its highly confidential, proprietary and trade secret information.

54. In the Sinagoga NDNCNS Agreements, Defendant Sinagoga agreed to return Mazzella Companies' Confidential Information and not to take, use, or disclose Mazzella Companies' Confidential Information and to keep Mazzella Companies' confidential, proprietary, and trade secret information secret.

55. Sinagoga has breached the Sinagoga NDNCNS Agreement by taking, retaining, using, and inevitably disclosing Mazzella Companies' confidential and proprietary information and trade secret information to aid himself and his new employer and

Mazzella Companies' competitor, DeShazo, to unfairly compete with Mazzella Companies in the marketplace.

56.  Mazzella Companies has performed all of its obligations under the Sinagoga NDNS Agreement and all conditions precedent to the enforcement of the Sinagoga NDNS Agreement have been satisfied, waived, or abandoned.

57.  Mazzella Companies faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

58.  As a direct and proximate result of Sinagoga's multiple and ongoing breaches of the Sinagoga NDNS Agreements, Mazzella Companies faces the immediate and irreparable loss of its confidential, proprietary or trade secret information, the loss of its competitive position, the loss of business and employee goodwill, the loss of experienced workforce, loss of sales, and the loss of its investment in time and energy in generating its confidential information. Mazzella Companies has no adequate remedy at law for these losses and no amount of money could compensate Mazzella Companies for these losses.

59.  Mazzella Companies is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining and restraining Sinagoga and any other person or entity acting in aid or concert, or in participation with him as follows: (a) prohibiting Sinagoga from any further use of Mazzella Companies' information (b) prohibiting Sinagoga and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Mazzella Companies' trade secret or confidential information; (c) prohibiting Sinagoga from engaging in any other conduct

that would otherwise violate the Sinagoga NDNCNS Agreement; and (d) requiring Sinagoga to immediately return all of Mazzella Companies' property and information..

60. As a direct and proximate result of Defendants' actions, Mazzella Companies has also been damaged in a monetary amount to be proven at trial including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including attorney fees and costs associated with this action.

### COUNT FOUR: BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (Against Defendant Sinagoga)

61. Mazzella Companies incorporates herein by reference all allegations set forth in Paragraphs 1 through 60 as if fully rewritten herein.

62. In April 2023, Sinagoga signed his NDNCNS Agreement, which included the following section:

> **Duty of Loyalty During Employment**. While employed by Company, Employee shall not either (a) become employed by, own an interest in, or provide any services or assistance to any Competing Business (except that Employee may own less than 1% of the issued and outstanding securities of any publicly-traded corporation); or (b) solicit, advise or assist any Actual Customer or Potential Customer of Company to engage in any business transaction with a Competing Business that involves Competitive Services.

> *See* Exhibit 4 at Paragraph 9.

63. By reason of the employee relationship and contractual agreement, Sinagoga had a duty to exercise the highest degree of skill, care, good faith and loyalty in protecting the interests of Mazzella Companies, including, but not limited to Mazzella Companies' interests in maintaining business relationships, maintaining confidentiality over Mazzella Companies' highly sensitive valuable, confidential, proprietary and trade

secret information, and honoring and requiring others to honor contractual commitments to Mazzella Companies.

64. Sinagoga willfully, maliciously and consciously disregarded Mazzella's rights, breached his fiduciary duties to Mazzella Companies, including the duties of loyalty and good faith by, among other things, working against Mazzella Companies' interests, improperly accessing, taking, and keeping Mazzella Companies' confidential, proprietary and trade secret information to gain a competitive advantage and engaging in self-dealing.

65. As a direct and proximate result of Sinagoga's actions, Mazzella Companies faces the immediate and irreparable loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of experienced workforce, loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information. Mazzella Companies has no adequate remedy at law for these losses and no amount of money can compensate Mazzella Companies for these losses.

66. Mazzella Companies is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Sinagoga, and any other person or entity acting in aid or concert or in participation with him as follows: (a) prohibiting Sinagoga from any further use of Mazzella Companies' information (b) prohibiting Sinagoga and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Mazzella Companies' trade secret or confidential information; (c) prohibiting Sinagoga from engaging in any other conduct that would

otherwise violate the Sinagoga NDNCNS Agreement; and (d) requiring Sinagoga to immediately return all of Mazzella Companies' property and information..

67. As a direct and proximate result of Sinagoga's actions, Mazzella Companies has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including any attorney fees and costs associated with this action.

## COUNT FIVE: CONVERSION
### (Against Defendant Sinagoga)

68. Mazzella Companies incorporates herein by reference all allegations set forth in Paragraphs 1 through 67 as if fully rewritten herein.

69. Mazzella Companies has, at all relevant times, been the owner of its confidential, proprietary and trade secret information and company-issued property and accounts.

70. After the termination of his employment with Mazzella Companies, Sinagoga did not immediately return all of Mazzella Companies' confidential information and property. Instead, Sinagoga forwarded emails from his Mazzella Companies-issued email account to a personal email account and retained information in personal accounts despite Mazzella's request that he return all Mazzella Companies' property.

71. As described above and without knowledge or authorization of Mazzella Companies, Defendants Sinagoga has unlawfully taken and converted Mazzella Companies' confidential or proprietary information and property that he knew belongs to Mazzella Companies, to further his own and DeShazo's interests and business opportunities to the detriment of Mazzella Companies.

72. To date, Sinagoga has not returned Mazzella Companies' information and property that continues to remain in his possession.

73. To date, Sinagoga has not returned or paid for Mazzella Companies' expenses, resources, or any other tangible efforts that Mazzella Companies incurred to build, grow maintain, and secure the sensitive business information that Sinagoga has suddenly received the benefit.

74. As a direct and proximate result of Defendants' actions, Mazzella Companies faces the immediate and irreparable loss of its confidential, proprietary or trade secret information, the loss of its competitive position, the loss of business and employee goodwill, the loss of experienced workforce, loss of sales, and the loss of its investment in time and energy in generating its confidential information. Mazzella Companies has no adequate remedy at law for these losses and no amount of money could compensate Mazzella Companies for these losses.

75. Mazzella Companies is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Sinagoga and any other person or entity acting in aid or concert or in participation with him as follows: (a) prohibiting Sinagoga from any further use of Mazzella Companies' information (b) prohibiting Sinagoga and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Mazzella Companies' trade secret or confidential information; (c) prohibiting Sinagoga from engaging in any other conduct that would otherwise violate the Sinagoga NDNCNS Agreement; and (d) requiring Sinagoga to immediately return all of Mazzella Companies' property and information.

76. As a direct and proximate result of Defendants' actions, Mazzella Companies has also been damaged in a monetary amount, including punitive damages, to be proven at trial,

but which in no event is less than seventy-five thousand dollars ($75,000) including any attorney fees and costs associated with this action.

## COUNT SIX: UNJUST ENRICHMENT

77. Mazzella Companies incorporates herein by reference all allegations set forth in Paragraphs 1 through 76 as if fully rewritten herein.

78. After the termination of his employment with Mazzella Companies, Sinagoga did not immediately return all of Mazzella Companies' confidential information and property. Instead, Sinagoga forwarded information from his Mazzella Companies-issued email account to a personal email account and Sinagoga failed to return information contained in his personal email accounts in his possession despite Mazzella Companies' request that he return all Mazzella Companies' property.

79. As described above and without knowledge or authorization of Mazzella Companies, Defendant Sinagoga has unlawfully taken Mazzella Companies' confidential or proprietary information and property that he knew belongs to Mazzella Companies, to further his own and DeShazo's interests and business opportunities to the detriment of Mazzella Companies.

80. To date, Sinagoga has not returned Mazzella Companies' confidential, proprietary information and property that continues to remain in his possession.

81. Sinagoga has taken Mazzella Companies' confidential or proprietary information and property that he knew belong to Mazzella, and unlawfully benefitted from using Mazzella Companies' confidential, proprietary information and property to develop and increase the business opportunities of DeShazo and Sinagoga in unfair competition with Mazzella Companies.

82. As a direct and proximate result of Defendants' actions, Mazzella Companies faces the immediate and irreparable loss of its confidential, proprietary or trade secret information, the loss of its competitive position, the loss of business and employee goodwill, the loss of experienced workforce, loss of sales, and the loss of its investment in time and energy in generating its confidential information. Mazzella Companies has no adequate remedy at law for these losses and no amount of money could compensate Mazzella Companies for these losses.

83. Mazzella Companies is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert or in participation with them as set forth above in Count One of this Complaint.

84. As a direct and proximate result of Defendants' actions, Mazzella Companies has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including any attorney fees and costs associated with this action.

## **DAMAGES**

WHEREFORE, Plaintiff Mazzella Companies respectfully requests that this Court enter judgment in its favor and against Defendants on the Complaint as follows:

1. That this Court temporarily, preliminarily and permanently enjoin and restrain Defendant Sinagoga and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) Prohibiting Defendant Sinagoga from any further use of Mazzella Companies information;

21

(b) Prohibiting Defendant Sinagoga and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Mazzella Companies' trade secret or confidential information;

(c) Prohibiting Defendant Sinagoga from engaging in any other conduct that would otherwise violate the Sinagoga NDNCNS Agreement;

2.      That this Court require Defendant and any other person or entity acting in aid or concert, or in participation with him, to immediately return all of Mazzella Companies' property, keeping no copy, note, summary, extract, or derivative;

3.      That Mazzella Companies be awarded compensatory and punitive damages in an amount to be proven at trial, including any pre- and post-judgment interest;

4.      That Mazzella Companies be awarded its reasonable attorneys' fees and costs;

5.      Such other relief in Mazzella Companies' favor that the Court deems just and required under the circumstances of this case.

Respectfully submitted,

ZASHIN & RICH CO., L.P.A

*s/ Stephen Z. Zashin*

Stephen S. Zashin (0064557) ssz@zrlaw.com
Ami J. Patel (0078201) ajp@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441
F: (216) 696-1618

*Attorney for Plaintiffs*

## **VERIFICATION**

STATE OF _Ohio_                        )

                                               )    SS:

COUNTY OF _Cuyahoga_          )


I swear that I have reason to believe the facts in the foregoing Complaint are true to the

best of my knowledge or based upon reasonably inquiry.

Name: _Krist Andrews_

Title: _CHRO_

On behalf of Mazzella Companies


SWORN TO BEFORE ME and subscribed in my presence this _1ᵗʰ_ day of

_February_, 2024.


_Michelle A Caldwell_

Notary Public

My commissions expires on: _3-15-26_

MICHELLE A CALDWELL
Notary Public
State of Ohio
My Comm. Expires
March 15, 2026